CULLEN, J.
This action is brought to compel the specific performance of a contract between the parties for an exchange of real properties. The plaintiff attended at the place prescribed by the contract for passing the title, and tendered a conveyance of his property, and of the money which by the contact he stipulated to pay. The defendant declined to carry out the contract, or deliver the plaintiff a deed of his (defendant’s) property. No reason was as signed by the defendant for the refusal. At the time at which title was to be taken, there were certain mortgages on the plaintiff’s property, in addition to the one subject to which, by the terms of the contract, the defendant was to take the property. These mortgages were presently payable, and the plaintiff, at the time prescribed for performance of the contract, tendered with his deed proper satisfaction pieces, and offered to pay for recording them. These ( mortgages have since been satisfied of record. After the refusal1 of the defendant, the plaintiff instituted this action, alleging his ability and desire to perform the contract, and the ability of the de- j fendant to compel with it, and prayed judgment for its specific per-! formance. The defendant answered, denying plaintiff’s ability to convey a good title, and especially set forth the incumbrance of the mortgages before mentioned. He also counterclaimed for his expenses for the examination of the title, and for the services of his broker in negotiating the exchange. The special term held plaintiff’s title good, and decreed that the defendant specifially perform the contract for exchange, or, in default of such performance, that the plaintiff be awarded damages.
We think that the existence of the mortgages on the plaintiff’s property, unsatisfied of record, did not place the plaintiff in any detault. Conceding that it was the duty of the plaintiff to see that he mortgages were properly discharged of record, and that he could not impose that burden on the defendant, still it was a duty which at the time the plaintiff was entirely able to perform. The refusal of the defendant to take title was arbitrary, and no reason was assigned therefor. Had the defendant given the existence of the mortgages as the reason for his refusal to take title, the plaintiff could at, once have proceeded to have the mortgages satisfied of record. As the defendant assigned no such ground for his conduct, but absolutely refused to carry out the contract, we think that it was not necessary for the plaintiff to satisfy the mortgages at the time. However this may be, and assuming that plaintiff was *622 in default, the mortgages have been since satisfied of record, and it was entirely within the power of a court of equity to relieve hint from the default. Haffey v. Lynch, 143 N. Y. 241, 62 S. . 171; Day v. Hunt, 112 N. Y. 191, 20 S. R. 233.
But there was one objection to the plaintiff’s title, proved on the-trial, which though discovered after the defendant had refused to perform his contract, and now urged solely to relieve him of its-obligations, is, in our opinion, valid, and must prevent a recovery by the plaintiff. The premises contracted to be conveyed by the plaintiff were a plot at the southwesterly corner of Courtlandt avenue and 148th street, in the city of New York, 27 feet and 5 inches in fronton Courtlandt avenue by 94 feet in depth on the 148 th street. The plaintiff placed in evidence a deed to himself from Anna T. Dale and James S. Dale, dated April 16, 1894, conveying these premises by proper description. The defendant now objects that there was no sufficient evidence given to show that the plaintiff ever entered into possession of the premises under that deed. It may be that this contention is correct. If such be the case, the plaintiff would have failed to prove a prima facie title. But it appears from the whole case, which seems to have been rather loosely tried, that the possession of the plaintiff was assumed by both sides. On this assumption, and proof of the plaintiff’s deed, it was incumbent on the defendant to show that there was any defect in the title. Forbes v. Halsey, 26 N. Y. 53; Moser v. Cochrane, 107 N. Y. 35, 11 St. Rep. 200; Greenblatt v. Hermann, 144 N. Y. 13, 62 S. R. 859; -The evidence for the defendant showed that the property of the plaintiff was part of a large tract of land in the then town of Morrisania, owned by Gerard W. Morris, and laid out into lots, streets, and avenues by him, by a map made in 1853. The streets and avenues seem not to have been public highways, and came into being solely by the act of the owner in laying them out, and selling lots fronting upon them. The first deed in the chain of plaintiff’s title was from Morris to one Klingelhofer. This deed conveyed three lots fronting on Mott street, as laid down on the Morris map. The description ran along the southerly side of Mott street, and did not include any part of the land lying wifhin that street. By chapter 841 of the Laws of 1868, commissioners were appointed to lay out streets, roads, and avenues in the town of Morrisania, and, to that end, to adopt or reject such highwas or streets as might then be actually laid out and open or in use as public streets. Under this statute, in February, 1871, the commissioners filed a map by which it appears that Mott street was retained on the plan adopted by them, under the name of “ One-Hundred and Forty-eight Street. ” But while, so far as we can gather from the map filed, the lines of Old Mott street and the present 148th street are identical, it seems, by the evidence of the surveyors who located the street lines from monuments established by the commissioners, that the actual location of 148th street is one foot to the north of the lines of Mott street. It is not necessary for us to determine whether the map filed by the commissioners shouldin law, control the location of the monuments. The premises of the plaintiff, as occupied by the building thereon, concededly *623 are but 26 feet 5 inches in front. If the location of Mott street controls, then the premises are a foot deficient in front, because the distance from the center of the party wall to the south line of Mott street is but 26 feet 5 inches,—the space occupied by tliehouse. If, however, the actual location of 148th street determined by the commissioners’ monuments is to control; then there is a distance of 27 feet 5 inches between the southerly line of plaintiff’s premises and the southerly line of 148th street. This is the full distance called for by the contract. The plaintiff sought to establish title to the additional one foot which formerly lay in Mott street by a conveyance from the heirs of Morris to his grantor, Anna T. Dale. This chain of title is criticised on the ground that who were the heirs of Morris was not sufficiently proven. W© think that, presumptively, the conveyance was sufficient; and, under the rule of law already cited, it was incumbent on the defendant to point out in any other parties. But, though the title to this strip a foot wide is thus shown in the plaintiff, it appears to be incumbered with an easement in favor of the owners of other lots fronting on the street. The plaintiff contends that, by the action of the commissioners in rejecting this strip of Mott street from the limits of 148th streett he title to the strip reverted, unincumbered, to the owners of the soil. We think this position cannot be sustained. In the case of a public highway, it is doubtless true that when the highway is closed by proper authority the abutting owners do not continue to possess a private easement over the highway as a right of way. It was so held in Wheeler v. Clark, 58 N. Y. 267, and in Kings County and Fire Insurance Co. v. Stevens, 101 N. Y. 411. But the present case differs from those cited. The-rights of the purchasers of lots fronting on Mott street were not the rights that abutters have in a public highway, but private easements, created by lying out the streets, and the sale of lots theron. In Hight v. Littlefield, 147 N. Y. 338, 69, S. R 674, the owner of a plot of land laid out thereon a street running from the public street or highway to a railroad. Lots were sold, bounded by the street. It was held that such conveyances, with the map, secured to the grantee an easement or right of way in the strip of land delineated as a street; that, whether it was a public street or not, the grantee-acquired the right to insist that at all times the way be kept open and unobstructed for the benefit of his premises; that irrespective of the rights of the public in a public street, the owners of lots bounded upon the street have, under such circumstances, a right of way, as between themselves and their grantor. This easement could only be extinguished by releases from the owners of adjacent property, or by proof that such owners had abandoned it by building out or inclosing their lots to a new line. Welsh v. Taylor, 134 N. Y. 450, 74 S. R. 653. The case is barren of any proof in this-respect It seems to us, therefore, that either the plaintiff has a lot only 26 feet 5 inches in front, or if his lot be 27 feet 5 inches, then that, as to one foot of that frontage, it is, on the proof in this case, subject to such an easement in favor of the adjacent abutters as would deprive a purchaser of any beneficial use. This deficiency of 1 foot we regard as too substantial to be overlooked. It may b© *624 "that, on another-trial, plaintiff can show that the property owners on the street have gone out to the new line. In that case, in our judgment, his title is good. But, if the plaintiff should be unable to adduce such proof, it is still plain that the defendant originally repudiated his contract, not on the ground of this defect of title, but solely because he repented his bargain. He was neither ready nor willing to perform. He is therefore not entitled to damages, nor should the plaintiff be mulcted in costs-
The plaintiff, at his election, may either take a new trial, the ■costs to abide, event, or an order reversing the judgment and dismissing the complaint, without costs.
All conear.